IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Councilmember Jeffery Young, Jr.   :
on behalf of and as representative   :
of Council of the City of Philadelphia   :
and Strawberry Mansion Community   :
Concern   :
           v.   :   No. 360 C.D. 2026
  :   Submitted: June 16, 2026
City of Philadelphia, City of   :
Philadelphia Zoning Board of   :
Adjustment, Philadelphia Housing   :
Authority, Pennrose LLC,   :
and Strawberry Mansion Housing   :
LLC   :
  :
Appeal of: Jeffery Young, Jr.   :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER       FILED: July 13, 2026

Jeffery Young Jr. (Councilmember Young), a member of the Council of the City of Philadelphia (Council), appeals from the Order of the Court of Common Pleas of Philadelphia County (common pleas) that upheld the Decision of the City of Philadelphia Zoning Board of Adjustment (Board) that approved dimensional variances for an affordable housing development project located at 3230-3238 Diamond Street (Diamond Street Property) being developed by the Philadelphia Housing Authority (Authority), Pennrose LLC, and Strawberry Mansion Housing, LLC (together, Pennrose) (collectively, Applicants). On appeal, Councilmember Young argues common pleas erred in finding that he waived all but one issue and

that the Board erred in granting the variance because Applicants did not meet their burden of proof and Applicants did not hold a public meeting for the Diamond Street Property as required by Section 14-303(12)(c)(.5) of the Philadelphia Zoning Code (Code),[1] Title 14 of THE PHILADELPHIA CODE (2012) § 14-303(12)(c)(.5). The Authority and Pennrose reply that the Board's Decision should be affirmed, and Pennrose separately asserts that Councilmember Young lacked standing to appeal the Board's Decision.

## I. BACKGROUND

### A. Proceedings Before the Board

This appeal concerns the development of the Diamond Street Property as part of a scattered-site affordable housing development project that utilizes 14 parcels located throughout the Strawberry Mansion neighborhood (the Project), which would consist of 55 to 57 units. The Philadelphia Land Bank conveyed these 14 parcels, which are vacant lots and described as distressed, blighted, or subject to "short-term dumping," to the Authority for its use and approved Applicants' efforts to obtain building permits for the Project. (Board Decision, Findings of Fact (FOF) ¶¶ 11, 13, 15, 17-18, 30; Board Decision, Conclusion of Law (COL) ¶ 13; Reproduced Record (R.R.) at 85a, 115a-16a, 128a, 130a-31a, 137a, 142a, 145a, 166a, 430a-33a, 499a.) Thus, the Authority owns the Project, which is being developed by Pennrose and will be marketed for senior housing. (FOF ¶¶ 11, 18, 38; COL ¶¶ 13-14; R.R. at 191a.) One goal of the Project was to ensure affordable quality units in an area where affordable housing may be an issue in the future. (FOF ¶¶ 18, 20, 30, 47; COL ¶¶ 13-14; R.R. at 136a, 142a, 150a, 430a-34a, 499a.) The

---

[1] The Code is available at https://codelibrary.amlegal.com/codes/philadelphia/latest/phildadelphia_pa/0-0-286773 (last visited July 13, 2026.)

2

Diamond Street Property is located within the RM-1 (Residential Multi-Family) zoning district. The proposed use on this property would be Multi-Family Household Living and will consist of 21 dwelling units. (FOF ¶ 2.)

The Philadelphia Department of Licenses and Inspections (L&I) denied a permit for the Diamond Street Property because 3 dimensional variances were needed: 1 for rear yard depth (9 feet was required, 0 was proposed), 1 for maximum building height (38 feet allowed, 45.5 feet proposed), and 1 for bicycle parking spaces (7 spaces required, 0 spaces proposed). (*Id.*) Applicants appealed L&I's denial of the permit to the Board. (*Id.* ¶ 4.) Prior to the Board holding a hearing, Applicants submitted a revised plan for the Diamond Street Property, clarifying that a pilothouse and elevator tower were part of the zoning plan. (*Id.* ¶ 3.)

Strawberry Mansion Community Concern (SMCC) was designated the coordinating Registered Community Organization (RCO) for the Project. (*Id.* ¶ 14.) On August 23, 2024, Applicants requested a continuance of the Board hearings that had been scheduled at that point so that all of the hearings on the 14 properties could be heard together, copying Councilmember Young and SMCC's Director Bonita Cummings (Cummings). (*Id.* ¶ 5 n.3; R.R. at 403a.)

Applicants emailed Cummings in December 2024, requesting a meeting with Cummings about other properties. (R.R. at 679a.) Also included in that email were the addresses of the 14 parcels involved in the Project and a note that a hearing on those parcels was scheduled before the Board on March 12, 2025. (*Id.*) Applicants and Cummings had a phone call on January 27, 2025, and Applicants attempted to follow-up by email on February 4, 11, 18, and 24, 2025, in order to schedule an RCO meeting. (*Id.* at 674a-78a.) Applicants copied Councilmember Young's Director of Development, Conlan Crosley (Crosley), on the February 11, 18, and 24 emails.

3

SMCC did not respond to any of Applicants' efforts. SMCC's counsel entered his appearance on March 10, 2025, and asked for a continuance of the March 12 hearing, which the Board granted and rescheduled a consolidated hearing for April 22, 2025. (*Id.* at 404a, 414a.) SMCC still did not schedule any community or RCO meetings on the Project.

The Board held a hearing on April 22, 2025.[2] The parties presented statements to the Board, and the Board received letters of support for the Project from State Senators Sharif Street and Vincent Hughes, State Representative Keith Harris, and Ryan Boyer of the Philadelphia Building and Construction Trades Council. (FOF ¶¶ 11-12.) Representatives from the Authority, Strawberry Mansion Community Development Corporation (Strawberry Mansion CDC), and members of the community testified in support of the Project, including about the parcels being vacant lots and the presence of blight found therein. (*Id.* ¶¶ 15, 17, 45, 46.) Representatives from Applicants and the Philadelphia City Planning Commission (Commission) testified about the specific development plans for the Diamond Street Property, the requested variances, and the funding of the Project, particularly its eligibility for a federal Low Income Housing Tax Credit. (*Id.* ¶¶ 10, 13, 18, 30, 34-37, 42, 47.) Pennrose's representative adopted counsel's statements regarding the details of the Diamond Street Property part of the Project. (*Id.* ¶ 38.) Another of Pennrose's representatives testified that this property would have senior housing, as requested by the community, and explained why there was no bike parking planned due to the presence of an existing large bike parking area. (*Id.*) A representative

---

[2] The Board's hearing encompassed separate appeals relating to the 14 parcels. Testimony regarding all of the Project, including introduction of letters of support and testimony in support of the Project, was intermixed with testimony related to the specific appeals of the parcels. Testimony regarding the Diamond Street Property is found at pages 185a to 209a of the Reproduced Record.

from the Commission testified that the Commission had concluded that the Project supported its Comprehensive Plan and that the proposed variances were minor deviations from the Code that were consistent with the Code's spirit and matched the existing character of the surrounding area. (*Id.* ¶¶ 30, 47.)

Councilmember Young, in whose district the Project is located, testified that his opposition to the Diamond Street Property variances was due to the absence of a community meeting for that parcel. (*Id.* ¶¶ 43-44.) Crosley, the Director of Development for Councilmember Young, acknowledged on cross-examination that Councilmember Young's office had never requested nor organized a community meeting for the Diamond Street Property. (*Id.* ¶ 19 .) Cummings testified on behalf of SMCC, the registered RCO, about concerns with the Project being comprised of rental units, rather than allowing for home ownership, that the Diamond Street Property was not initially included in the meeting that occurred in 2019, that there had been no meeting for this property, and that there is sufficient senior housing in the area. (*Id.* ¶¶ 13-14, 31, 39.) Cummings conceded that, notwithstanding Applicants contacting her, she had not attempted to have a community meeting and that there was community support for the Project. (*Id.* ¶¶ 39-40.)

At the end of the hearing, the Board held its vote pending discussion in executive session and left the record open for the parties to submit additional items. (*Id.* ¶ 48.) Applicants submitted revised plans addressing concerns raised by the Board, including covered bicycle storage and a relocated entry for the building's courtyard. (*Id.* ¶ 49.)

The Board unanimously approved the dimensional variances for the Diamond Street Property with a proviso based on the revised plans. (*Id.* ¶ 50.) The Board

found that Applicants had met their burden of proof on their dimensional variance requests. (COL ¶ 20.) As to the Diamond Street Property,

> . . . the Board first noted that [] Applicant[s] w[ere] only seeking dimensional variances as the square footage of the lot permitted the requested 21 dwelling units by right. Because of its corner location, the Board found that [] Applicant[s'] proposal to construct an L-shaped building to align with the existing residential structures on Diamond and 33rd Streets was in keeping with the character of the neighborhood. By constructing the building to match adjacent structures, it was [] not feasible for [] Applicant[s] to provide the required nine feet of rear yard depth. However, consistent with the spirit of the [] Code, [] Applicant[s] still provided ample rear yard area (i.e. the courtyard) for the building's residents in excess of what is required. The requested variance for additional height was necessitated by the pilothouse for rooftop maintenance and the elevator tower. Clearly, without an elevator, a multi-story apartment building would not be appropriate for senior citizens. Thus, the Board concluded that [] Applicant[s] had established an unnecessary hardship to justify the requested dimensional variances at the Diamond Street [P]roperty. . . .
>
> [] The Board also found that the requested dimensional variances were the minimum necessary to afford relief. As previously noted, while [] Applicant[s] [are] not providing the required rear y[ard] depth due to the shape of the building on a corner lot, [they are] supplying a rear courtyard with square footage that exceeds Code requirements. While the pilothouse and elevator tower technically extend the building's height above the 38 feet permitted in the RM-1 zoning district, the structure itself only rose to 36 feet at the parapet and was aligned with the adjacent structures. In its updated revised plans, [] Applicant[s] [were] able to eliminate the refusal for lack of bicycle parking, further demonstrating that the remaining refusal [was] the least relief needed to address the unnecessary hardship. . . .
>
> [] Lastly, the Board concluded that [] Applicant[s] had satisfied the remaining criteria under [the Code], thereby demonstrating that the proposals at the subject properties would not have a negative effect on the public safety, health, and general welfare of the surrounding community. The primary opposition to the developments at these sites was the coordinating RCO, who admittedly refused to schedule a

6

community meeting as required under the [] Code to discuss the projects. . . .

[] In addition to SMCC, opposition to the project at the Diamond Street [P]roperty was also expressed by Councilmember Young. His main concern was the lack of community discussion surrounding this aspect of the overall project. Yet, testimony was presented at the hearing that his office was both aware of the multi-family dwelling proposed at this site as well as the attempts of [] Applicant[s] to arrange the required community meeting via the coordinating RCO. The remainder of the feedback received by the Board regarding the subject properties (and the overall project) were expressions of strong support that believed this 55-unit development would have a positive impact on the neighborhood.

(*Id.* ¶¶ 16-19.)

*B. Appeal to Common Pleas*

Councilmember Young appealed the approval of the Diamond Street Property variances to common pleas as a representative of the Council, pursuant to Resolution 250623 (Resolution), passed by the Council on June 5, 2025, purporting to authorize him to appeal the Board Decision on the Council's behalf. After argument but without taking evidence, common pleas denied the appeal and affirmed the Board's Decision. Upon Councilmember Young's appeal to this Court, he filed a statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b), (1925(b) Statement), in which he asserted eight reasons for why common pleas erred in affirming the Board's Decision: the court erred in affirming the Board's grant of the variances; Applicants did not establish unnecessary hardship; any hardship was self-created; the property could be used in conformity with the Code; the Project adversely impacts the public interest; the Board's decision was unsupported by substantial evidence; and common pleas did not allow Councilmember Young to adopt the other objections. In its Opinion

7

written pursuant to Rule 1925(a), common pleas held that Councilmember Young waived all the issues but the ones related to the lack of a community meeting and whether the Project would adversely impact the public interest due to his failure to raise the others before the Board and/or by not sufficiently developing them. (1925(a) Opinion (Op.) at 7-8.)

As to the preserved issues, common pleas explained that Councilmember Young objected only due to the lack of a community meeting for the Diamond Street Property. According to common pleas, once Applicants gave their written notice of their application to the RCO, the RCO bore the burden to convene a community meeting within 45 days and, if it did not, the Board may hold its hearing. (*Id.* at 10 (citing CODE § 14-303(12)(d)(.2)(.a), (e)(.1), (e)(.5)(ii)).) The record showed, common pleas held, that Applicants advised SMCC of the Diamond Street Property part of the Project in writing and followed up with SMCC repeatedly to schedule a meeting, and that SMCC failed to schedule or hold a meeting within 45 days. Common pleas found no error or abuse of discretion in the Board's determination that the Diamond Street Property part of the Project was not adverse to the public interest, pointing to the evidence of public support and the Board's acceptance of that evidence to support its conclusion. (*Id.*)

8

**II. DISCUSSION**[3]

Councilmember Young argues common pleas erred in holding that he waived almost all of his arguments and that the Board erred in approving the dimensional variances because Applicants did not hold a public meeting for the Diamond Street Property and did not establish that any unnecessary hardship was not self-created, that the relief requested was the minimum necessary, or that the Project would not adversely affect the public interest. The Authority and Pennrose argue Councilmember Young's arguments are without merit, and Pennrose separately argues that Councilmember Young lacked standing to appeal the Board's Decision under Section 17.1 of the First Class City Home Rule Act (Home Rule Act), 53 P.S. § 13131.1.[4]

We begin with Pennrose's standing argument, which maintains that Councilmember Young lacked standing to appeal the Board's Decision because an individual city councilmember is not an aggrieved party by virtue of their position alone and the Resolution purporting to delegate the Council's standing to him fails.[5] (Pennrose's Brief (Br.) at 5 (citing *Appeal of Clarke*, 316 A.3d 1095, 1101 (Pa. Cmwlth. 2024); *O'Neill v. Phila. Zoning Bd. of Adjustment*, 169 A.3d 1241, 1245 (Pa. Cmwlth. 2017)).) Pennrose asserts the Resolution is either procedurally ineffective or unconstitutional. Pursuant to Section 17.1 of the Home Rule Act, only

---

[3] "Where the trial court does not take additional evidence, we are limited to determining whether the [Board] committed an error of law or manifestly abused its discretion." *Coal Gas Recovery, L.P. v. Franklin Twp. Zoning Hearing Bd.*, 944 A.2d 832, 837-38 (Pa. Cmwlth. 2008) (citation omitted). "An abuse of discretion occurs when the findings are not supported by substantial evidence in the record." *Id*. at 838 n.9 (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

[4] Act of April 21, 1949, P.L. 665, added by Section 2 of the Act of November 30, 2004.

[5] Pennrose also asserted Councilmember Young's lack of standing before common pleas in response to Councilmember Young's appeal. (*See* R.R. at 396a-99a.)

9

"aggrieved persons" and Council have standing to appeal from a Board decision. 53 P.S. § 13131.1. Procedurally, Pennrose argues that there is no evidence that the Resolution was ever presented to the mayor for approval, which Section 6 of the First Class City Government Law (First Class City Law), 53 P.S. § 12526,[6] requires in order for a resolution to become effective. Without the mayor's approval of the Resolution, it never became effective and the general principle that an individual councilmember does not have standing to appeal a Board decision based on their position is implicated. Pennrose further asserts that the Council does not have the authority to delegate its appeal authority to a particular councilmember because the General Assembly granted the authority to appeal to the legislative **body** in the Home Rule Act, and that this issue was left open for future consideration in this Court's recent decision in *Appeal of Clarke*, 316 A.3d at 1103 n.8.

Councilmember Young did not file a reply brief responding to Pennrose's arguments.

"In Pennsylvania, a party seeking judicial resolution of a controversy 'must establish . . . he has standing to maintain the action.'" *Johnson v. Am. Standard*, 8 A.3d 318, 329 (Pa. 2010) (quoting *Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009)). "A challenge to a party's standing raises a question of law subject to this Court's plenary, de novo review." *O'Neill*, 169 A.3d at 1244. On the issue of who has standing to appeal a decision by the Board, Section 17.1 of the Home Rule Act provides that

> **[i]n addition to any aggrieved person, the governing body vested with legislative powers** under any charter adopted pursuant to this act **shall have standing to appeal** any decision of a . . . board . . . created to regulate development within the city. As used in this section, the term "aggrieved person" does not include taxpayers of the city that are

---

[6] Act of June 25, 1919, P.L. 581.

not detrimentally harmed by the decision of the [] board . . . created to regulate development.

53 P.S. § 13131.1 (emphasis added). Similarly, Section 14-303(15)(b)(.1) of the Code provides:

A final decision made by the Zoning Board or the Commission pursuant to this Zoning Code may be appealed to a Pennsylvania Court of Common Pleas by any aggrieved party or by [the] Council pursuant [to] [Section 17.1 of the Home Rule Act] within 30 days of the decision or such other time as may be provided by law.

CODE § 14-303(15)(b)(.1)

Accordingly, "under the plain language of the Home Rule Act, standing to appeal a zoning decision in the City is limited to two classes—aggrieved persons and the governing body vested with legislative powers . . . , which in Philadelphia is the [] Council." *O'Neill*, 169 A.3d at 1245 (citing *Spahn v. Zoning Bd. of Adjustment*, 977 A.2d 1132 (Pa. 2009); Section 301(2)(a) of the Code, CODE § 14-301(2)(a)). Although "the Home Rule Act and the Code grant[] standing to [the] Council as a body; nowhere does either grant standing to the individual councilmembers." *Id.* The Court cannot ignore the plain language of this legislation, nor can the Court add language or redraft that legislation. *Id.*

In *Appeal of Clarke*, the then-Council president filed an appeal from a Board decision, a year later Council adopted a resolution purporting to authorize him to appeal as its designated representative (first resolution), and the landowner filed a motion to quash based on *O'Neill*. Common pleas granted the motion, concluding that the first resolution did not confer the Council's standing on the Council president because it was not legal. *Appeal of Clarke*, 316 A.3d at 1099. The Council president appealed to this Court, asking us to vacate common pleas' order because

11

the resolution designated him the Council's representative for purposes of litigation based on the Council's subsequent passage of a second resolution, retroactively authorizing him to represent the Council and ratifying the actions he took in that appeal. *Id.* at 1100. The landowner responded that *O'Neill* controlled and that the Council lacked the authority to delegate its standing to individual councilmembers. *Id.*

In affirming common pleas' determination that the Council president lacked standing, this Court examined the resolutions at issue in that case as well as the text of the Home Rule Act and Code. *Id.* at 1101-03. The Court explained that the first resolution did "not address [the] Council's pursuit of appeals from [Board] decisions beyond obtaining counsel," which the resolution references as "counsel to represent [the] Council," and not as counsel to represent an individual councilmember on behalf of the Council. *Id.* at 1103. Thus, it did not support the Council president's argument that the resolution authorized individual councilmembers to appeal Board decisions. The Court also rejected the Council president's arguments that the second resolution expressly authorized and ratified his appeal because that resolution was passed more than a year after he filed the appeal and almost one month after common pleas quashed the appeal from the Board's decision. *Id.* We explained

> [e]ven if we were to consider the [second r]esolution, and even if we were to determine it was valid, [the] Council did not provide any argument or binding authority[] to support its purported ability to retroactively authorize a councilmember to file an appeal on its behalf. Thus, the [second r]esolution does not cure [the first r]esolution's [] defects.[] *See Commonwealth v. Brown*, . . . 196 A.3d 130, 185 n.21 ([Pa.] 2018) ("[A]ppellate courts are 'neither obligated, nor even particularly equipped, to develop an argument for a party. To do so places the Court in the conflicting roles of advocate and neutral arbiter.'")

12

*Id.* at 1103-04. The Court noted that "[b]ecause we concluded, under these facts, that neither [the first r]esolution nor the [second r]esolution authorized [the] Council [p]resident's appeal, we do not reach the question of whether [the] Council could validly pass an ordinance or resolution designating a legal representative for purposes of appealing [Board] decisions." *Id.* at 1104 n.8.

Here, the Resolution states that it

[a]uthoriz[es] Councilmember Young's appeal, on behalf of and as representative of [the] Council of the decision of the [] Board . . . with respect to [the] Diamond Street [Property].

WHEREAS, Pursuant to Resolution No. 240585, the Council President, or a Councilmember designated by the Council President, shall have full authority to seek and retain legal counsel to file an appeal of the decision of the [Board] and to engage in any related litigation as may be necessary on behalf of and in the name of [the] Council; and

WHEREAS, The Council intends by this Resolution to authorize Councilmember Young to be a party to such an appeal on its behalf and to ratify Councilmember Young's authority to file the appeal on behalf of and as representative of the Council; now, therefore, be it

RESOLVED, BY THE COUNCIL, That Councilmember Jeffery Young, Jr. has full authority to intervene in and thereafter as a party therein to prosecute and defend, on behalf of and as representative of this Council, the appeal of the decision of the [] Board . . . with respect to [the] Diamond Street [Property].

FURTHER RESOLVED, That this Council ratifies all steps taken to date by Councilmember Young on behalf of and as representative of [the] Council in preparation for said appeal.

FURTHER RESOLVED, That this Council authorizes Councilmember Young to take all further steps on behalf of and as representative of [the] Council with respect to such appeal as Councilmember Young determines is appropriate for the successful prosecution and defense of such appeal, including, if necessary, any further appeals.

13

(R.R. at 704a (capitalization in the original).) Councilmember Young asserted in his appellate brief filed with common pleas that the Council adopted the Resolution on June 5, 2025, and he filed his appeal on June 11, 2025, and he attached a certified copy of the Resolution to his appellate brief filed with common pleas. (*Id.* at 278a, 704a-05a.)

> Section 6 of the First Class City Law relevantly states that:
>
> Every legislative act of the [C]ouncil shall be by ordinance or resolution, and **every** ordinance or **resolution shall**, <u>**before it takes effect, be presented**</u>, duly engrossed and certified, **to the mayor for his approval**.
>
> The mayor shall sign such ordinance or resolution if he approves it, whereupon it shall become law. If he disapproves it, he shall return it to the [C]ouncil, with his reasons for disapproval, at the first meeting thereof held not less than ten days after he receives it, and, if the [C]ouncil pass the same, within seven days after he has returned it with his disapproval, by a vote of three-fifths of all the members elected thereto, it shall become law without his approval. If the mayor does not return such ordinance or resolution within the time herein required, it shall become law without his approval.

53 P.S. § 12526 (emphasis added). Councilmember Young represented that the Council adopted the Resolution; however, as Pennrose asserts, there is no indication in this record that the Resolution was presented to the mayor for approval as required by Section 6 for that Resolution to become effective. Councilmember Young has **not** presented **any** argument in **opposition** to Pennrose's contentions that he lacks standing. As our Supreme Court held in *Brown*, which we quoted in *Appeal of Clarke* in a similar situation, "appellate courts are 'neither obligated, nor even particularly equipped, to develop an argument for a party. To do so places the Court in the conflicting roles of advocate and neutral arbiter.'" *Appeal of Clarke*, 316 A.3d at 1103-04 (quoting *Brown*, 196 A.3d at 185 n.21).

14

Because Councilmember Young lacks standing in his role as an individual councilmember, *O'Neill*, 169 A.3d at 1245, and it is not clear that the Resolution he relies upon to claim he has standing to act on behalf of the Council became effective, 53 P.S. § 12526, the Court will affirm common pleas' Order upholding the Board's Decision on the basis that Councilmember Young lacked standing to appeal that decision.[7]

## III.    CONCLUSION

For the foregoing reasons, we affirm common pleas' Order, albeit on different grounds.[8]

_____
RENÉE COHN JUBELIRER, President Judge

Judge Dumas and Judge Wolf did not participate in the consideration of this matter.

---

[7] "It is well settled that this Court may affirm on other grounds where the grounds for affirmance exist." *Friends Boarding Home of W. Q. Meeting v. Commonwealth*, 260 A.3d 1064, 1076 n.9 (Pa. Cmwlth. 2021).

[8] Because of our disposition, we do not address the merits of Councilmember Young's appeal.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Councilmember Jeffery Young, Jr.  :
on behalf of and as representative  :
of Council of the City of Philadelphia  :
and Strawberry Mansion Community  :
Concern  :
                v.  :    No. 360 C.D. 2026
  :
City of Philadelphia, City of  :
Philadelphia Zoning Board of  :
Adjustment, Philadelphia Housing  :
Authority, Pennrose LLC,  :
and Strawberry Mansion Housing  :
LLC  :
  :
Appeal of:  Jeffery Young, Jr.  :

# **O R D E R**

     **NOW**, July 13, 2026, the Order of the Court of Common Pleas of Philadelphia County, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
RENÉE COHN JUBELIRER, President Judge